UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM HALEY, JR., individually and on behalf of NEW YORK INSULATION, LLC, and as father and natural guardian of E.H, a minor,

Plaintiffs,

v.

KRISTINE DEMO VAZQUEZ, individually and in her official capacity as Monroe County Family Court Judge; LORNA AFFRONTI, individually and in her official capacity as Attorney for the Child; MONROE COUNTY; MONROE COUNTY FAMILY COURT; ROBERT MOORE; NICK ABELE; JEFFREY GERACE; JOHN and JANE DOES 1-10,

Defendants.

---

**DECISION AND ORDER**

6:25-CV-06361 EAW

Plaintiff William Haley, Jr. ("Plaintiff" or "Haley"), on behalf of himself, New York Insulation, LLC ("New York Insulation"), and his minor child E.H., commenced this action on July 8, 2025. (Dkt. 1; Dkt. 4). Haley asserts claims against defendants Monroe County, Monroe County Family Court ("Family Court"), Kristine Demo Vazquez ("Judge Vazquez"), Jeffrey Gerace ("Gerace"), Lorna Affronti ("Affronti"), Robert Moore ("Moore"), and Nick Abele ("Abele") (collectively "Defendants"). (*Id.*).

Affronti answered the complaint (Dkt. 23) and motions to dismiss were filed by Monroe County (Dkt. 29), Judge Vazquez and Family Court (Dkt. 33), Gerace (Dkt. 46),

and Moore (Dkt. 51). Affronti filed a motion for summary judgment. (Dkt. 64). Abele has not appeared.[1]

Also pending are various motions filed by Haley. Specifically, Haley has filed two separate motions for a temporary restraining order (Dkt. 56; Dkt. 61), a motion to compel (Dkt. 58), a motion for leave to file a proposed amended complaint and for extension of time to serve (Dkt. 62), and a motion for sanctions (Dkt. 70).

For the reasons that follow, Defendants' motions are granted and Haley's motions are denied with the exception of his motion to amend, which is granted in part.

## BACKGROUND

### I. Factual Background

The following facts are taken from the complaint. (Dkt. 1; Dkt. 4).[2] As required at this stage of the proceedings, the Court treats Haley's allegations as true.

Although the complaint is not a model of clarity, Plaintiff's claims relate to a custody dispute in Monroe County Family Court between Plaintiff and E.H.'s mother for custody of E.H. (Dkt. 1; Dkt. 4). Judge Vazquez is a Monroe County Family Court judge who oversaw

---

[1] Plaintiff's proof of service reflects service upon Abele (Dkt. 17 at 2) by certified mail, but he has not appeared in this action.

[2] Plaintiff filed a preprinted complaint form (Dkt. 1) together with a document he titled "verified complaint and emergency motion for temporary restraining order and preliminary injunction" (Dkt. 4). The Court considers these documents collectively to constitute Plaintiff's operative pleading. However, it appears that Plaintiff may have only attempted to serve Defendants with the latter document (Dkt. 4) but did not include the complaint form (Dkt. 1) with the submission provided to Defendants. Plaintiff is cautioned that he is required to serve all portions of a pleading on Defendants.

some of the custody proceedings that are the subject of Plaintiff's complaint. (Dkt. 5 at 50, 55, 56). Gerace was an attorney who appeared in the proceedings (Dkt. 5 at 54), and Affronti an attorney-representative for E.H. (Dkt. 5 at 54).

Plaintiff alleges that he initially filed the child custody petition in 2022. (Dkt. 4 at ¶ 7). Multiple independent witnesses, including visitation supervisors, noted the strong bond between Plaintiff and E.H. (*Id.* at ¶ 10). Despite E.H. expressing a preference to reside with Haley, those preferences were systematically ignored by court-appointed representatives. (*Id.*). In retaliation for Plaintiff's pursuit of zealous legal advocacy on behalf of himself and his son, an Order of Protection was fraudulently obtained against Plaintiff by E.H.'s mother. (Dkt. 4 at ¶ 8; Dkt. 5 at 69-70). The Order of Protection was entered without sufficient inquiry into the credibility of the allegations and in violation of Plaintiff's constitutional rights. (Dkt. 4 at ¶ 8). Thereafter, Plaintiff was arrested for allegedly violating the Order of Protection based solely on innocuous acts that were unfairly distorted into criminal accusations. (*Id.* at ¶ 9).

In addition, Plaintiff's small business, New York Insulation, LLC, was a target of coordinated sabotage and cyber-attacks that Plaintiff believes was the result of financial interference by individuals with ties to Defendants. (*Id.* at ¶ 11). Plaintiff alleges that the proceedings in Monroe County Family Court "demonstrated pervasive procedural bias," including a refusal to investigate credible claims against E.H.'s mother, the suppression of favorable testimony, and ex parte actions which deprived Plaintiff of his constitutional rights. (*Id.* at ¶ 12).

In his complaint, Plaintiff asserts six claims: (1) violation of civil rights pursuant to 42 U.S.C. § 1983; (2) discrimination on the basis of gender and parental status; (3) malicious prosecution and abuse of process; (4) tortious interference with business relations; (5) *Monell* liability against Monroe County; and (6) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985. He seeks compensatory damages and injunctive relief asking the Court to immediately suspend and/or annul the state-court Order of Protection, grant Plaintiff primary physical custody of E.H., and appoint an independent investigator to examine Defendants. (*Id.* at 10-11).

## II. <u>Procedural Background</u>

Plaintiff commenced this action on July 8, 2025. (Dkt. 1). Although he initially sought *in forma pauperis* status (Dkt. 2), Plaintiff ultimately paid the filing fee on December 29, 2025. Plaintiff filed several motions for temporary restraining orders (Dkt. 4; Dkt. 10; Dkt. 16; Dkt. 42; Dkt. 43), which were denied by the Court (Dkt. 45).

On January 13, 2026, Affronti filed an answer. (Dkt. 23). On January 20, 2026, Monroe County filed its motion to dismiss. (Dkt. 29). On January 23, 2026, Judge Vazquez and Family Court filed a motion to dismiss. (Dkt. 33). On February 20, 2026, Gerace filed a motion to dismiss. (Dkt. 46). On March 2, 2026, Moore filed a motion to dismiss. (Dkt. 51). Plaintiff filed opposition to the pending motions to dismiss. (Dkt. 48; Dkt. 55; Dkt. 57).

On March 9, 2026, Plaintiff filed a motion to amend. (Dkt. 53). The Court denied the motion without prejudice on March 10, 2026, because Plaintiff failed to submit a proposed amended pleading with his motion. (Dkt. 54). On March 27, 2026, and April 10,

2026, Plaintiff filed additional motions for temporary restraining orders. (Dkt. 56; Dkt. 61). He filed a motion to compel on March 30, 2026 (Dkt. 58) and a motion for leave to amend and for extension of time to serve the complaint on April 10, 2026 (Dkt. 62). On May 29, 2026, Plaintiff filed a motion for sanctions. (Dkt. 70).

On April 21, 2026, Affronti filed a motion for summary judgment (Dkt. 64), to which Plaintiff filed opposition on April 30, 2026, and May 29, 2026 (Dkt. 67; Dkt. 69).

## DISCUSSION

### I. Legal Standards

#### A. Rule 12(b)(1)

"Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (citation modified). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it. . . ." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l,* 790 F.3d 411, 416-17 (2d Cir. 2015) (citation modified). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable

inferences in favor of the party asserting jurisdiction."). *Cf. Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (when a Rule 12(b)(1) motion is fact-based, evidence beyond the pleadings may be considered).

**B. Rules 12(b)(2) and 12(b)(5)**

"[A] Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Coon v. Shea*, No. 2:14-CV-85, 2014 WL 5847720, at *4 (D. Vt. Sept. 5, 2014) (citation modified), *report and recommendation adopted in relevant part*, No. 2:14-CV-85, 2014 WL 5849053 (D. Vt. Nov. 12, 2014). "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." *Jackson v. City of N.Y.*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (citation modified); *Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) ("While Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are closely interrelated." (citation modified)); *see also* C. Wright, A. Miller, & M. Kane, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.) ("Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him.").

A plaintiff bears the burden of proving that service was effective on a Rule 12(b)(5) motion to dismiss. *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (citation modified), *aff'd*, 626 F. App'x 297 (2d Cir. 2015); *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016 EAW, 2019 WL 1597497, at *6 (W.D.N.Y.

Apr. 15, 2019) ("When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." (citation modified)). A court may consider matters outside the pleadings to assess the sufficiency of service on a Rule 12(b)(5) motion. *Wilson v. Cuomo*, No. CV214815(GRB)(AYS), 2022 WL 4644695, at *3 (E.D.N.Y. Aug. 28, 2022), *report and recommendation adopted*, 2022 WL 4662825 (E.D.N.Y. Sept. 30, 2022).

**C. Rule 12(b)(6)**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

**D. Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find for that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec*., 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. Proper Parties

Before turning to the merits, the Court must address some threshold matters regarding the status of the named parties, specifically whether Haley, a non-lawyer, may assert claims on behalf of his minor child and business. The law is clear that he may not.

As to his small business, Plaintiff identifies it as an LLC in his complaint.[3] (Dkt. 4 at 1). An LLC may not proceed *pro se*. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel."); *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms, . . . a limited liability company also may appear in federal court only through a licensed attorney."); *Japanese Juices LLC v. United States*, No. 20-CV-1371 (CM), 2020 WL 8679708, at *1 (S.D.N.Y. Mar. 5, 2020) ("A limited liability company (LLC) can appear in federal court only through a licensed attorney."). Haley, a non-lawyer, cannot appear on behalf of an LLC. *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."); *In re Interiors of Yesterday, LLC*, 284 B.R. 19,

---

[3] To the extent that Plaintiff now contends that his business is not actually an LLC (despite his indicating it as an LLC in his own complaint), and is instead another corporate form, he may address that in any amendment.

23 (D. Conn. 2002) ("It is a long standing rule that artificial entities may not appear in federal court through a non-lawyer agent or employee.").

The law is equally clear that Haley, a non-lawyer, may not assert claims on behalf of his minor child. *Rumph on Behalf of C.R. v. City of New York*, No. 18-CV-8862 (CM), 2019 WL 1900335, at *1 n.3 (S.D.N.Y. Apr. 26, 2019) ("[N]on-attorney parents may not represent their minor children *pro se* in federal court."). "Minors 'are entitled to trained legal assistance so their rights may be fully protected' and nonlawyer parents are not trained to represent competently the interests of their children." *Berges v. Lafayette Dev., LLC*, No. 25-CV-10743 (KMW), 2026 WL 775816, at *3 (S.D.N.Y. Mar. 16, 2026) (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)); *see also Patterson v. New York,* No. 25-CV-1437 (LTS), 2026 WL 523060, at *3 (S.D.N.Y. Feb. 24, 2026) (dismissing any claims that non-lawyer parent attempted to assert on behalf of minor child); *Gadson v. Riverbay Corp.*, No. 1:25-CV-5182 (LTS), 2025 WL 2452353, at *7 (S.D.N.Y. Aug. 26, 2025) ("It appears that Gadson, as a *pro se* litigant, is raising, at least in part, claims on behalf of his minor daughter. The Court must dismiss those claims."). Plaintiff's attempt to characterize his representation as "next friend" does not change the analysis. *Stowe v. Town of Watertown*, No. 3:25-CV-00507 (VDO), 2026 WL 866275, at *3 (D. Conn. Feb. 12, 2026) (dismissing claims asserted by *pro se* parent as next friend to minor child).

Accordingly, the claims Plaintiff asserts on behalf of E.H. and New York Insulation, LLC, may not proceed as pleaded and are dismissed without prejudice. Should Plaintiff opt

to amend his complaint, as permitted herein, any claims asserted by E.H. or New York Insulation, LLC, may only be advanced through counsel.

## III. Improper Service

Defendants Monroe County, Judge Vazquez and Family Court, Gerace, and Moore challenge the sufficiency of service upon them.[4]

"For a court to exercise personal jurisdiction over a defendant, 'the plaintiff's service of process upon the defendant must have been procedurally proper.'" *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SIL), 2026 WL 873093, at *5 (E.D.N.Y. Mar. 30, 2026) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)). The Court concludes that Plaintiff has not established that these Defendants were properly served.

### A. Service On Individual Defendants

Pursuant to Fed. R. Civ. P. 4(e), Plaintiff could effectuate service on the individual defendants, i.e., Judge Vazquez, Gerace, and Moore, by any of the following means:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:

---

[4] Affronti also appears to have been served by certified mail but has not challenged the sufficiency of service and waived the defense. *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-CV-1761 (LAK), 2025 WL 1677756, at *3 (S.D.N.Y. June 13, 2025) ("The defense of improper service of process . . . must be raised in a reasonably timely fashion or it is waived." (citation modified)); *Onewest Bank N.A. v. Louis*, No. 15-CV-00597(PAC)(BCM), 2016 WL 3552143, at *6 (S.D.N.Y. June 22, 2016) (defense of insufficient service of process is subject to waiver), *report and recommendation adopted*, No. 15CIV597PACBCM, 2016 WL 4059214 (S.D.N.Y. July 28, 2016).

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). In addition, Rule 4(*l*) provides that "[u]nless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(*l*); *see also* L.R. Civ. P. 4 ("Proof of service shall be filed with the Clerk of Court.").

Service of process in New York is governed by section 308 of the Civil Practice Law and Rules ("CPLR"). Under this statute, service can be made upon an individual defendant by delivering the summons on the person to be served, CPLR 308(1), or pursuant to CPLR 308(2), service can be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]" CPLR 308(2). "In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [it is] presume[d] that [defendant] was properly served with the complaint." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

Plaintiff filed proofs of service (Dkt. 17) indicating that he served the individual defendants by certified mail through the United States Post Office on December 30, 2025.

This was not sufficient to constitute proper service. *Hernandez v. Hernandez*, No. 2:24-CV-8614 (NJC) (ST), 2026 WL 406112, at *1 (E.D.N.Y. Feb. 11, 2026) ("Service by certified mail is not a permissible method of personal service under Rule 4(e). . . . Service by certified mail, without more, is also not a permissible method of service under New York law.").

Plaintiff argues that even if there were technical errors in the service, the errors are harmless because Defendants clearly had notice of the lawsuit. (Dkt. 48 at 2). But whether Defendants had notice of the complaint is no moment; receipt of the summons and complaint is not a substitute for proper service. *Morrison v. New York State Div. for Youth Child. & Fam. Ser.*, No. 98-CV-643, 2000 WL 532762, at *3 (N.D.N.Y. Apr. 25, 2000) ("Notice of suit received by means other than those authorized by statute or rule cannot serve to bring a defendant within the jurisdiction of the court."); *Olivadoti v. 290 Riverside Co., LLC*, No. 12 Civ. 386(PAE), 2012 WL 1604906, at *5 (S.D.N.Y. May 8, 2012) ("Defective service is not cured or overcome on the mere assertion that a defendant had actual notice." (citation modified)); *see also Martin v. New York State Dept. of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978) ("A showing that the defendant has had actual notice of the lawsuit is not sufficient to bar a motion to dismiss under Rule 12(b)(2).").

For these reasons, the motions to dismiss by Judge Vazquez, Gerace, and Moore on the basis of improper service are accordingly granted and all claims against them dismissed without prejudice.

**B. Service on Monroe County and Family Court**

Monroe County and Family Court similarly argue that Plaintiff's failure to properly serve them requires dismissal of the claims against them for lack of personal jurisdiction. Again, the Court agrees.

Service on a state or local government is governed by Rule 4(j)(2) which provides:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
>
> > (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
> >
> > (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2).

CPLR 307 provides that "[p]ersonal service on a . . . state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section." CPLR 307. New York law provides that personal service on a county shall be made by delivering the summons to the county' "chair or clerk of the board of supervisors, clerk, attorney or treasurer." CPLR 311(a)(4).

Similar to the individual Defendants, Plaintiff attempted service on Monroe County and Family Court by mailing the complaint by certified mail. He also left a copy at the front desk of Family Court on January 2, 2026, though critically, offers no evidence that he left

the pleadings with an appropriate official to accept service on behalf of Family Court. (Dkt. 33-1 at ¶2). Susan Leach, the Chief Clerk of Family Court, submitted a declaration indicating that she was never personally served with the summons and complaint and has not designated anyone else to act as her agent to accept service on behalf of Family Court. (Dkt. 33-1).

Plaintiff has thus failed to demonstrate that service on Monroe County or Family Court was effective. *Daley v. Nassau Cnty. Sheriff's Dep't*, No. 2:25-CV-07052 (NJC) (SIL), 2026 WL 1272945, at *2 (E.D.N.Y. May 8, 2026) (service on Nassau County Sheriff's Department by certified mail "does not comport with the requirements of Rule 4"); *Sutter v. Dibello*, No. 18-CV-817(SJF)(AKT), 2021 WL 930459, at *9 (E.D.N.Y. Mar. 10, 2021) ("Since plaintiff does not allege, much less establish, that service was made in accordance with the method of service prescribed by New York law, *i.e.*, by personal delivery to the chief executive officer of [Unified Court System] or his or her designee, or by certified mail to the chief executive officer and personal delivery to an assistant attorney general or to the New York attorney general, plaintiff has not made a prima facie showing of jurisdiction.").

For these reasons, the motions to dismiss by Monroe County and Family Court for lack of personal jurisdiction are granted and all claims against them are dismissed without prejudice.

Notwithstanding the lack of proper service, Defendants also advance alternative arguments as to the substantive merit of Plaintiff's claims. The Court turns to these

arguments, particularly because it is allowing Plaintiff an opportunity to amend consistent with this Decision and Order.

## IV. Federal Claims

### A. Section 1983 Claims

Plaintiff frames his § 1983 claims against all Defendants as violations of his civil rights and the equal protection clause. He asserts a separate § 1983 claim against Monroe County pursuant to *Monell*.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"To 'establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show. . . the defendant's personal involvement in the alleged constitutional deprivation.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). The theory of respondeat superior is unavailable in a § 1983 action. *Lax v. City Univ. of New York*, No. 20-3906-CV, 2022 WL 103315, at *3 (2d Cir. Jan. 11, 2022); *Flannery v. Cnty. of Niagara*, 763 F. Supp. 3d 364, 426 (W.D.N.Y. 2025) ("A plaintiff's pleading therefore 'may not depend on a theory of

supervisory liability,' because 'government officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'" (quoting *McCluskey v. Roberts*, 2022 WL 2046079, at *3 (2d Cir. June 7, 2022))). "Instead, a plaintiff must. . . prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation modified).

Defendants raise a number of challenges to Plaintiff's § 1983 claims.

**1. Sovereign Immunity**

Family Court and Judge Vazquez argue that sovereign immunity bars Plaintiff's 1983 claims against them. The Court agrees that sovereign immunity bars Plaintiff's claims against Family Court and Judge Vazquez, to the extent she is sued in her official capacity.

"Absent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states." *Farid v. Smith*, 850 F.2d 917, 920-21 (2d Cir.1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). "State sovereign immunity not only extends to the state itself, but to state agencies that constitute 'arms of the State.'" *Barry v. City Univ. of N.Y.*, 700 F. Supp. 2d 447, 452 (S.D.N.Y. 2010) (quoting *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006)). Sovereign immunity bars claims for monetary damages and retrospective injunctive relief. *Constantino-Gleason v. Unified Ct. Sys.*, No. 21-CV-6327 (JLS), 2023 WL 4052302, at *8 (W.D.N.Y. June 16, 2023).

The claims Plaintiff asserts in his complaint implicate principles of sovereign immunity. "It is well established that New York State has not waived its sovereign immunity

from Section 1983 claims," *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (citation modified), and Congress did not override that immunity by enacting § 1983, *see also Goonewardena v. N.Y.*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to section 1983 actions nor has its sovereign immunity been abrogated."). "The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit." *Bythewood v. New York*, No. 22-2542-CV, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)); *Etheridge v. City of New York*, No. 25-CV-8707 (LTS), 2026 WL 734913, at *3 (S.D.N.Y. Mar. 16, 2026) ("The Court therefore dismisses Plaintiff's claims against the New York State Unified Court System, the New York County Family Court, and the [New York State Education Department] as barred by the Eleventh Amendment."). Moreover, "Eleventh Amendment immunity extends to state officials 'working on behalf of the state (*i.e.* in their official capacities).'" *Kellogg v. Nichols*, No. 1:23-CV-658, 2023 WL 8046892, at *3 (N.D.N.Y. Nov. 21, 2023) (quoting *Kisembo v. NYS Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018)).

Plaintiff's claims against Judge Vazquez in her official capacity and those asserted against Family Court that seek monetary damages and retrospective injunctive relief are therefore barred by principles of sovereign immunity. *McNair v. Utica Police Dep't*, No. 623CV699(DNH/ATB), 2023 WL 4935993, at *3 (N.D.N.Y. June 26, 2023) ("Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System

are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity."), *report and recommendation adopted*, 2023 WL 4931609 (N.D.N.Y. Aug. 1, 2023).

Accordingly, the claims against Family Court and Judge Vazquez in her official capacity that seek monetary damages and retrospective injunctive relief are dismissed.

**2. *Rooker-Feldman* and *Younger* Abstention**

To the extent Plaintiff's claims request that state court orders be overturned or that this Court intervene in ongoing state court matters, such claims are barred by the *Rooker-Feldman* and *Younger* abstention doctrines.

"*Rooker-Feldman* bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Sykes v. Mel S. Harris and Assoc. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, (2005)). "[T]he *Rooker Feldman* doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 119CV1288(LEK/CFH), 2020 WL 3503158, at *3 (N.D.N.Y. June 29, 2020). To the extent Plaintiff seeks to overturn final custody orders or orders of protection that have already been issued by the state court, any such claims would be barred by the *Rooker-Feldman* doctrine. *Dudley v. Hochul*, No. 5:24-CV-0048

(DNH/ML), 2024 WL 1906594, at *4 (N.D.N.Y. May 1, 2024) (holding that *Rooker-Feldman* applies when “a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court” (citation modified)), *report and recommendation adopted*, 2024 WL 2399913 (N.D.N.Y. May 23, 2024); *Masri v. Liebowitz*, No. 1:24-CV-1284 (LTS), 2024 WL 1639904, at *7 (S.D.N.Y. Apr. 15, 2024) (“Inasmuch as Plaintiff criticizes any final decisions of the Orange County Family Court and/or the Orange County Supreme Court in an effort to request that this Court overturn any of those courts’ final decisions, the *Rooker-Feldman* doctrine bars this Court from granting him such relief.”).

Alternatively, to the extent that the state court proceedings remain pending, Plaintiff’s claims for declaratory or injunctive relief are barred by the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971). “*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.” *Morpurgo v. Incorp. Vill. of Sag Harbor*, 327 F. App’x 284, 285 (2d Cir. 2009) (citation modified).

As to the first condition, “*Younger* applies if the federal action involves ongoing: (1) ‘state criminal prosecutions’; (2) ‘civil proceedings that are akin to criminal prosecutions’; or (3) civil proceedings that ‘implicate a State’s interest in enforcing the orders and judgments of its courts.’” *Torres v. Gaines*, 130 F. Supp. 3d 630, 636-37 (D. Conn. 2015) (quoting *Sprint Commc’ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). “Both the Supreme Court and the Second Circuit have observed that a ‘state-initiated proceeding to gain custody

of children allegedly abused by their parents' falls within the second category." *Id*. (citing *Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015)). "If the federal action falls into one of these three categories, a Court may then consider the additional factors . . . [of] whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Id*.

Turning to the additional conditions for application of the *Younger* abstention doctrine, it is well settled that "a custody dispute . . . raises important state interests." *Amato v. McGinty*, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *10 (N.D.N.Y. June 6, 2017) (citation modified), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017); *Reinhardt v. Com. of Mass. Dep't of Soc. Servs*., 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (explaining that "there can be no doubt that a custody dispute that involves allegations of sexual abuse raises important state interests," and noting that "[q]uestions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern"). Moreover, Plaintiff may raise these claims in the state proceedings. *Id.*

Put simply, Plaintiff's request that this Court intervene in the state court proceeding to undo certain court orders and award full custody of E.H. to Plaintiff involve matters directed to the state's compelling interest and are appropriately addressed in that proceeding. *See, e.g.*, *Masri*, 2024 WL 1639904, at *6 ("To the extent that Plaintiff asks this Court to intervene in any his pending state court child-custody, child-support, and/or divorce proceedings, he has not alleged any facts showing that bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect those proceedings. Thus,

. . . the Court dismisses such claims under the *Younger* abstention doctrine."); *Curcio v. Grossman*, No. 22 CV 1648 (VB), 2022 WL 767167, at *7 (S.D.N.Y. Mar. 14, 2022) ("to the extent that Plaintiff asks this Court to intervene in [her pending state-court child-custody] . . . proceeding, the Court also dismisses those claims under the *Younger* abstention doctrine"); *Walker*, 2020 WL 3503158, at *4 (where the plaintiff challenged a temporary order in an ongoing child custody dispute, alleging that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid," finding application of *Younger* abstention barred the plaintiff's federal claims for injunctive relief).[5]

[5] Judge Vazquez and Family Court also argue that Plaintiff's claims are barred by the domestic relations exception to subject matter jurisdiction. (Dkt. 33-4 at 7-9). But the domestic relations exception deprives federal courts of the ability to handle cases involving divorce, alimony, or child custody matters in cases where jurisdiction arises under diversity of citizenship. Here, Plaintiff alleges federal questions. The Court therefore finds this exception inapplicable here. *See Ortiz v. Brown*, No. 3:25-CV-01495 (OAW), 2026 WL 2322825, at *4 (D. Conn. Aug. 11, 2026) ("[T]he Second Circuit has held that the [domestic relations] exception applies only in cases where federal jurisdiction is based on diversity of citizenship, not where –as here – the plaintiff has raised a federal question."); *Garanin v. Murgolo*, No. 25-CV-1959 (AMD) (PK), 2026 WL 2098841, at *6 n.8 (E.D.N.Y. July 21, 2026) ("In diversity jurisdiction cases, the domestic relations exception deprives federal courts of diversity jurisdiction where a plaintiff seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody decree. *See Ankenbrandt [v. Richards*], 504 U.S. 689, 704 (1992). The *Akenbrandt* exception to diversity jurisdiction does not apply here because all the parties are residents of New York.").

Although not raised by Defendants, the domestic relations abstention doctrine also appears applicable to portions of the claims pursued by Plaintiff. *Etheridge*, 2026 WL 734913, at *6 ("Plaintiff's claims also implicate a narrower abstention doctrine for domestic matters. A federal district court generally must abstain from exercising federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child" so long as those claims may be fully and fairly determined in the state courts."); *Phillips v. Schenectady Child Support Unite*, No. 1:24-CV-853 (BKS/PJE), 2025 WL 895035, at *8 (N.D.N.Y. Mar. 24, 2025) ("Courts in this circuit routinely dismiss actions for lack of subject matter jurisdiction, due to the domestic relations abstention doctrine, where the plaintiff is seeking review of child custody [and child support]

**3. Absolute Judicial Immunity**

Plaintiff's claims against Judge Vazquez are also barred on the basis of absolute judicial immunity, and thus to the extent that the Court retains jurisdiction over the claims, they are dismissed on the merits. *See Wang v. Delphin-Rittmon*, 664 F. Supp. 3d 205, 216 (D. Conn. 2023) (dismissal based on judicial immunity is on the merits under Rule 12(b)(6)). "Judicial immunity protects conduct taken as part of all judicial acts except those performed in the clear absence of jurisdiction." *Walker*, 2020 WL 3503158, at *6 (citation modified). All of Plaintiff's claims against Judge Vazquez stem from alleged actions taken in connection with the child custody proceedings and he has not identified any acts that were taken in the absence of jurisdiction.

Accordingly, Judge Vazquez's motion to dismiss Plaintiff's claims against her is granted on this basis as well. *See id.* at *7 (explaining that judge had "absolute judicial immunity for all judicial actions that occurred within her judicial capacity" of determining the proper custody for the plaintiff's children and noting that immunity applies "even when the judge is accused of acting maliciously and corruptly" (citation modified)).

**4. Quasi-Judicial Immunity**

The Court also concludes that Affronti, an attorney for the child, is entitled to quasi-judicial immunity "for [the] performance of tasks which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). A court employee's "acts that implement judicial decisions or that are performed at the direction or

---

proceedings." (citation modified)), *report and recommendation adopted*, 2025 WL 1191320 (N.D.N.Y. Apr. 24, 2025).

under the supervision of a judicial officer come under the ambit of judicial immunity." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 252 (E.D.N.Y. 2010); *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) ("The doctrine of quasi-judicial immunity extends absolute immunity to 'certain others who perform functions closely associated with the judicial process.'" (quoting *Parent v. New York*, 786 F. Supp. 2d 516, 535 (N.D.N.Y. 2011))).

"It is similarly well established that the court-appointed attorneys for children are entitled to absolute quasi-judicial immunity for actions taken within the scope of their appointment." *Garanin*, 2026 WL 2098841, at *10; *Gerken v. Gordon*, No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402, at *5 (N.D.N.Y. Dec. 6, 2024) ("Additionally, Defendant Nancy Harding, as the attorney for Plaintiff's child is entitled to quasi-judicial immunity."), *aff'd*, No. 24-3336, 2025 WL 2847429 (2d Cir. Oct. 8, 2025). "This is because law guardians or attorneys for children serve 'serve as an arm of the court, or act as an integral part of the judicial process.'" *Gerken*, 2024 WL 5001402, at *5 (quoting *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, *4 (E.D.N.Y. May 20, 2013) (citation modified)).

The facts and circumstances alleged here fail to support a plausible inference that Affronti was acting outside of her judicially-directed functions as attorney for the child. Therefore, she is entitled to absolute quasi-judicial immunity and the damages claims against her must be dismissed on this basis.

**5. The Non-State Defendants are Not State Actors**

Plaintiff's claims against Affronti, Gerace, and Moore are not sustainable because those defendants are not state actors and were not acting under color of state law. "Because

the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful."); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004) ("Section 1983 authorizes a court to grant relief when a party's constitutional rights have been violated by a slate or local official or other person acting under color of state law.").

Privately retained attorneys do not act under color of state law for purposes of § 1983. *See D'Amato v. Rattoballi*, 83 F. App'x 359, 360 (2d Cir. 2003) (district court properly dismissed claim against plaintiff's former lawyer because former lawyer was a privately retained attorney not acting under color of state law); *Daniels v. Ferrell*, No. 11-cv-4597 (SJF) (AKT), 2012 WL 482136, at *2 (E.D.N.Y. Feb. 10, 2012) ("Generally, attorneys, whether court-appointed or privately retained, are not state actors for purposes of Section 1983."). Attorney Gerace appears to have been a privately retained attorney in the divorce and custody proceedings and not a state actor who can be held liable for alleged violations of Plaintiff's constitutional rights. *Lewis v. Walsh*, No. 8:24-CV-00098 (GTS/CFH), 2024 WL 2835269, at *5 (N.D.N.Y. June 4, 2024) ("Absent special circumstances suggesting concerted action between an attorney and a state representative, a private attorney's legal representation of a private person, however, does not constitute state action for the purpose of stating a claim under [§] 1983 against that attorney, regardless of whether that attorney is

privately retained, court-appointed, or employed as a public defender." (quoting *Masri*, 2024 WL 1639904, at *9) (citation modified)).

Similarly, there is no basis to conclude that Affronti, as attorney for E.H., was a state actor. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) ("[W]e hold that law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983."); *Hastings v. Onondaga Cnty.*, No. 5:26-CV-191 (MAD/DJS), 2026 WL 1458924, at *2 (N.D.N.Y. Mar. 3, 2026) ("The law is clear, however, that an attorney for a child in New York Family Court proceedings is not a state actor."), *report and recommendation adopted*, 2026 WL 1091193 (N.D.N.Y. Apr. 22, 2026); *Gerken*, 2024 WL 5001402, at *6 ("Assuming Defendant Harding is not entitled to quasi-judicial immunity for the sake of this analysis, she would not be considered a state actor insofar as the Second Circuit has explicitly held 'that law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983.'" (quoting *Milan*, 808 F.3d at 964)).

Likewise, there is no evidence that Moore, who Plaintiff contends assisted E.H.'s mother in framing him for a domestic dispute, was a state actor. *Pappas v. Lorintz*, 832 F. App'x 8, 13 (2d Cir. 2020) (holding that plaintiff's ex-spouse and her attorney were "not state actors, nor were they 'acting under color of state law,' and therefore are not subject to a § 1983 claim" (quoting *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014))); *Errato v. Seder*, No. 3:22-CV-793 (SVN), 2023 WL 2743284, at *5 (D. Conn. Mar. 31, 2023) (dismissing § 1983 claim against ex-spouse and her attorney where "[p]laintiff has

failed to allege that either [the ex-spouse] or the Attorney Defendants acted under color of state law"), *aff'd*, No. 23-638, 2024 WL 726880 (2d Cir. Feb. 22, 2024).

While a private actor may be held liable under § 1983 when a plaintiff can show that the private actor entered into a conspiracy with a state actor to deprive that plaintiff of his constitutional rights, *see Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002), no such allegations have been plausibly alleged here. The Second Circuit has made it clear that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.* Although Plaintiff alleges that Defendants were conspiring with each other, these conclusory allegations are not supported by any concrete factual allegations and rest instead entirely on speculation and conjecture. *Hudson v. Gioe*, No. 24-CV-1695(JMA)(ST), 2024 WL 3202857, at *5 (E.D.N.Y. June 26, 2024) ("Here, Plaintiff includes no factual allegations from which the Court could reasonably construe state action by Gioe through joint action or a conspiracy with a state actor to deprive Plaintiff of his constitutional rights."). Because Plaintiff has failed to state a viable § 1983 conspiracy claim against Gerace, Affronti, or Moore, the claims against these parties fail to state a claim upon which relief may be granted.

**6. Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Consequently, a plaintiff asserting an equal protection typically must allege that "similarly situated persons have been treated differently." *Gagliardi v. Village of Pawling*, 18 F.3d

188, 193 (2d Cir. 1994). A plaintiff may, however, also allege "an equal protection claim . . . under a theory of discriminatory motivation underlying a facially neutral policy or statute. . . ." *Pyke v. Cuomo*, 258 F.3d 107, 108-09 (2d Cir. 2001). Hence, "allegations about comparators are not necessary when there is direct evidence of intentional discrimination." *Zahaf v. N.Y. Dep't of Corr. & Cmty. Supervision*, No. 22-CV-291-LJV, 2024 WL 4362313, at *10 (W.D.N.Y. Sept. 30, 2024) (citing *Pyke*, 258 F.3d at 108-10).

To the extent Plaintiff may be asserting that he was subjected to an equal protection violation due to his gender and contention that mothers are treated more favorably in custody proceedings, he has not pleaded a cognizable equal protection claim against any of the Defendants. Plaintiff's allegations do not provide sufficient support for the conclusion that that he was treated differently as a result of his gender or parental status. *Rivera v. Putnam Cnty.*, No. 22 CV 1877 (VB), 2023 WL 3601720, at *6 (S.D.N.Y. May 23, 2023) ("Thus, his allegations are not sufficient to support an equal protection claim. And, to the extent that plaintiff attempts to plead that his daughter's mother was treated more favorably, plaintiff's allegations are conclusory and do not explain any purported disparate treatment by Varbero. Accordingly, plaintiff's equal protection claim against Varbero must be dismissed."); *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 104 (N.D.N.Y. 2013) (dismissing equal protection claim by father claiming that social services employees treated him less favorably because he is man and took mother's side from the beginning).

Consequently, this claim is subject to dismissal for failure to state a claim.

### 7. Municipal Liability

Although Plaintiff purports to allege a freestanding *Monell* claim, "Monell does not provide an independent separate cause of action against a municipality; 'it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation,'" *Gem Fin. Serv., Inc. v. City of New York*, 298 F. Supp. 3d 464, 490 (E.D.N.Y. 2018) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)). "In other words, *Monell* is not a cause of action, but is rather a form of liability." *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 118-19 (W.D.N.Y. 2022).

Further, even to the extent he could assert such a claim, he has failed to do so. To state a claim against Monroe County under § 1983, Plaintiff must show that the challenged action was performed pursuant to a municipal policy or custom. Such a claim is pled with facts showing: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

> A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (citing cases).

Plaintiff asserts broadly that he was wronged by Monroe County but he does not plausibly allege specific facts in support of this assertion or identify *any* official policy or custom that caused him to experience a constitutional deprivation. His allegations are therefore insufficient to sustain a claim. *Etheridge*, 2026 WL 734913, at *4 ("Here, Plaintiff asserts claims arising from her own singular experience with the City of New York and the NYC DOE. She does not allege any facts suggesting that the City or the NYC DOE has a policy, practice, or custom that cause a violation of her federal rights. The Court therefore dismisses Plaintiff's claims against the City of New York and the NYC DOE for failure to state a claim on which relief may be granted.").

As such, the *Monell* claim against Monroe County is similarly dismissed.

**B. Conspiracy: 42 U.S.C. § 1985(3)**

"To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Brown v. Cathey*, No. 24 CIV. 1154 (PAE) (GWG), 2026 WL 318357, at *6 (S.D.N.Y. Feb. 6, 2026) (quoting *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983)), *report and recommendation adopted*, 2026 WL 636848 (S.D.N.Y. Mar. 6, 2026). Conspiracy claims under § 1985(3) "require the plaintiff to show that the conspiracy was motivated by racial or otherwise class-based

animus." *Maldonado v. Maldonado*, No. 1:19-cv-7047 (ENV), 2020 WL 999871, at *2 (E.D.N.Y. Mar. 2, 2020) (citing *United Bhd. of Carpenters & Joiners,* 463 U.S. at 834-35)).

Any conspiracy claim under § 1985(3) "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Thus, a plaintiff "must make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . including facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018) (citation modified). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiff has not alleged facts to suggest that any Defendants entered into an unlawful agreement or had a meeting of the minds with the goal of depriving him of his rights or to obstruct justice in state or federal court. Nor has Plaintiff plausibly alleged that the Defendants conspired between or among each other against him on the basis of his race or other class-based animus. While Plaintiff speculates that Defendants had potential personal or professional relationships outside of the family court proceedings, he has not demonstrated any connection between those relationships and the outcome of his custody

proceedings in a manner that could support a conspiracy claim. The conspiracy claims are therefore dismissed.

## V. <u>State Court Claims</u>

Defendants seek dismissal of Plaintiff's state-law claims on various grounds. But because the federal claims must be dismissed, this Court must first decide whether to exercise supplemental jurisdiction over the remaining state-law claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise supplemental jurisdiction over a claim under many circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction[.]" *Id.* § 1367(c)(3). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (citation modified).

Given the decision at this stage that all of Plaintiff's federal claims are subject to dismissal, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. If Plaintiff successfully repleads any of the federal claims that have been dismissed without prejudice and with leave to replead, he may also replead the state causes of action.

## VI. Leave to Amend

As noted above, Defendants have established that the claims as presently asserted by Plaintiff are subject to dismissal. Plaintiff filed a motion for leave to amend his complaint and for an extension of time to serve Defendants. (Dkt. 62). Plaintiff's motion to amend was accompanied by a proposed amended complaint but as set forth herein, many of the claims that Plaintiff seeks to pursue are not cognizable. Therefore, the Court denies the motion to amend to the extent that Plaintiff seeks to serve the proposed pleading. But generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)).

Given Plaintiff's *pro se* status, the Court will grant Plaintiff leave to file an amended complaint, in which he may attempt to plead viable causes of action Defendants. Plaintiff may file and serve an amended complaint consistent with this Decision and Order within 45 days of entry of this Order. Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). Therefore, Plaintiff's amended complaint must include all of

his allegations, so that the amended complaint may stand alone as the sole complaint in this action which Defendants must answer.[6]

In addition, as noted, Plaintiff's extension of time to serve is granted. Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time, [b]ut if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (citation modified).

It is clear that Plaintiff's attempted service on Defendants was outside of the 90-day deadline set forth in Rule 4(m). *Griffin v. Quiros*, No. 3:25-CV-793 (VDO), 2026 WL 1863879, at *3 (D. Conn. June 29, 2026) ("The Court finds that it must dismiss the claims against the Doe Defendants because they were not served within the time provided under Federal Rule of Civil Procedure 4(m). Plaintiff neither complied with the deadline to effect service of process nor showed good cause for the failure."). Plaintiff explains that he was unaware of the 90 day service deadline and that he believed he was following the instructions

[6] Although leave to amend after a summary judgment motion has been filed is not typically granted, it can be appropriate particularly where, as here, little to no discovery has been conducted prior to the filing of the motion. *Syed v. NYCHHC Kings Cnty. Hosp.*, No. 24-CV-1624 (NRM) (JRC), 2025 WL 895384, at *4 (E.D.N.Y. Mar. 24, 2025) ("Permitting Plaintiff leave to replead an amended complaint . . . is well within the latitude of deference a court can afford a pro se party even if dismissal was based on summary judgment grounds." (quoting *Poindexter v. Cash Money Records*, No. 13-CV-5882 (RWS), 2014 WL 4652622, at *3 (S.D.N.Y. 2014)). Accordingly, the Court will permit Plaintiff to reassert claims against Affronti, to the extent that they state cognizable claims and do not run afoul of the express rulings herein.

provided by Court personnel for service. In light of his *pro se* status and because Plaintiff only received the summonses following his payment of the filing fee on December 29, 2025, the Court finds good cause warranting an extension of Plaintiff's time to serve.

Accordingly, unless proper service is waived by Defendants, Plaintiff must serve his amended complaint in accordance with the requirements set forth herein within 45 days of the filing of any amended complaint. Failure to properly serve Defendants will result in dismissal of the amended complaint.

## VII. Motions for Temporary Restraining Orders (Dkt. 56; 61), Motion to Compel (Dkt. 58), Motion for Sanctions (Dkt. 70)

In light of the Court's ruling on the dispositive motions, Plaintiff's motions for temporary restraining orders, to compel, and for sanctions are denied without prejudice as moot.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Monroe County (Dkt. 29), Judge Vazquez and Family Court (Dkt. 33), Gerace (Dkt. 46), and Moore (Dkt. 51) are granted. Affronti's motion for summary judgment is granted. (Dkt. 64). Haley's motions for a temporary restraining order (Dkt. 56; Dkt. 61), a motion to compel (Dkt. 58), and motion for sanctions (Dkt. 70) are denied without prejudice as moot. Plaintiff's motion for leave to file a proposed amended complaint and for extension of time to serve (Dkt. 62) is granted in part and denied in part. Plaintiff may file an amended complaint that attempts to assert claims against Defendants but Plaintiff is cautioned that any amended complaint must state cognizable claims and not run afoul of the express rulings herein. Plaintiff may file an

amended complaint within 45 days of the date of this Decision and Order. In the event an amended complaint is filed, Plaintiff may serve the amended complaint in accordance with the requirements set forth herein within 45 days of the filing of any amended complaint.

Plaintiff is cautioned that if he does not file an amended complaint by this deadline, the Clerk of Court shall enter judgment in favor of Defendants and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 3, 2026
Rochester, New York